UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| STEPHEN PENROSE, JAMES THOMAS, JOSEPH GUARDINO, and DANIEL POPE on behalf of themselves and all others similarly situated, | ) ) ) ) ) |
| Plaintiffs, | ) Case No.: 4:17CV294 HEA ) |
| v. | ) ) |
| BUFFALO TRACE DISTILLERY, INC., OLD CHARTER DISTILLERY CO., and SAZERAC COMPANY, INC., | ) ) ) ) |
| Defendants. | ) |

## **OPINION, MEMORANDUM AND ORDER**

This matter is before the Court on Defendants' Motion to Dismiss. [Doc. No. 14]. The motion is fully briefed. For the reasons set forth below, the Motion is denied.

### **Facts and Background[1]**

Plaintiffs brought this putative class action alleging that Defendants misrepresented that Old Charter bourbon has been "aged 8 years." Plaintiffs assert claims for violation of the Missouri Merchandising Practices Act (Count I), Deceptive Acts or Practices, New York Gen. Bus. Law § 349 (Count II), False

---

[1] The recitation of facts is taken from Plaintiffs' Complaint and is set forth for the purposes of this Opinion only. It in no way relieves the parties of the necessary proof of the facts herein.

Advertising, New York Gen. Bus. Law § 350(Count III), unjust enrichment (Count IV), Breach of Express Warranty (Count V), Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*. (Count VI), Breach of Implied Warranty of Merchantability (Count VII), Fraud (Count VIII), Negligent Misrepresentation (Count IX), Violation of Florida Deceptive and Unfair Trade Practices Act, Fla.Stat. §§ 501.201, *et seq*. (Count X), Violation of the South Carolina Unfair Trade Practices Act, S.C.Cofe.Ann. § 39-5-10.  Plaintiffs seek compensatory and punitive damages, injunctive relief and attorneys' fees and expenses and costs.

Plaintiffs' Complaint alleges the following:

Defendants represent that Old Charter is an 8-year aged bourbon. That is false and misleading. Old Charter used to be aged for 8 years, but Defendants stopped that practice in approximately January 2014. The bourbon bearing the Old Charter name is now aged for significantly less than 8 years and is of inferior quality to its former self. But in an attempt to upsell the newer, younger, and inferior product, Defendants' bottle labeling still misleads consumers to believe that the bourbon is aged 8 years.

The misrepresentation appears in three places on the bottle: on the neck, on its own label on the top of the body, and in the text portion which reads "gently matured for eight seasons in century old brick warehouses:"

The label from before and after the switch was unchanged with one minor exception. Defendants omitted the words "aged" and "years" from the label, but still repeatedly touted the now-meaningless number 8.

This deceptive change fails to inform anyone that Defendants' product is now composed of cheaper and lower-quality bourbon. The number 8 is still prominently shown in the same three places on the bottle, and the label reads "gently matured for eight seasons …."

This misrepresentation could not have occurred by accident or happenstance. The subtlety of this change evidences an intention by Defendants to deceive consumers.

It is clear that the word "seasons" unambiguously means "years." This is readily apparent from the labels of Defendants' prior eight-year and ten-year Old Charter products, which claimed to be matured for "eight seasons" and "ten seasons," respectively. It is also clear that the number "8" is not merely part of Old Charter's name. This is apparent from the Old Charter 10-year product, which does not include the number "8" on its labeling. Similarly, Defendants' own website refers to the Product as "Old Charter" without any reference to the number 8. The Alcohol and Tobacco Tax and Trade Bureau ("TTB") application for Old Charter's labeling likewise reads "Old Charter" under the "Brand Name" section. The number 8 does not appear in any of these places.

Published reviews of Old Charter agree that quality has significantly dropped since Defendants stopped aging the bourbon for 8 years. One reviewer wrote that he had "mistakenly purchased a handle of Old Charter 8 in Louisiana thinking it was the 8 year and had then found a[n old] bottle of the 8 year [and] decided that we needed to do another comparison. See if I should still be upset at the change." After sampling both, the reviewer concluded that "for Old Charter 8 the NAS [non age-stated] release was strikingly inferior to the age-stated product."

Countless consumers have complained online of Defendants' deceiving practice. For example, one consumer wrote:

> Several bourbons are going this route and you can argue over the reasoning as to why but it [angers me] that I bought Old Charter 8 yesterday thinking it was 8 yr [sic] old and not the new no age statement 8.

Another wrote:

> And what's said is deceptive, very deceptive in fact . . . It's still hogwash though and deceptive . . . because what you're really doing is selling younger whisky while pretending it's older.

Another wrote:

> It's one thing to have supply issues and be honest. It's another to pull the years but keep the number on the bottle to give the perception of an aged product. It's getting hard to support this companies [sic] products, very hard.

Despite the fact that Defendants switched the Old Charter bourbon to a younger and lower quality spirit, the price remained the same. Consumers therefore paid the premium price of an 8-year bourbon for a much lower-value product. The

price premium associated with age-stated bourbon is readily discernable from Defendants' pricing of their other products. For example, at Total Wine, the largest independently owned wine store in the United States, WL Weller 12 year commands a 50% price increase over WL Weller Special Reserve, the non-age-stated version of the same bourbon.

Plaintiffs are purchasers of Old Charter who assert claims on behalf of themselves and similarly situated purchasers of Old Charter for violations of the consumer protection laws of Missouri, Florida, New York, and South Carolina, unjust enrichment, breaches of express and implied warranties, fraud, and negligent misrepresentation

**Legal standard**

In examining a Rule 12(b)(6) motion to dismiss for failure to state a claim, the Court accepts all of Plaintiff's factual allegations as true and construes those allegations in Plaintiff's favor. *Kulkay v. Roy*, 847 F.3d 637, 641 (8th Cir. 2017). To survive such a motion, Plaintiff's complaint "must include sufficient factual allegations to provide the grounds on which the claim rests." *Drobnak v. Andersen Corp*, 561 F.3d 778, 783 (8th Cir. 2009). Put simply, Plaintiff's claim for relief must be "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).

When considering a Defendant's motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the Court must first "distinguish between a 'facial attack' and a 'factual attack' " on the Court's jurisdiction. *Osborne v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990). When a 12(b)(1) motion makes a facial attack, "the court restricts itself to the face of the pleadings, and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6)." *Id.* (internal citations omitted). On the other hand, a factual attack requires the Court to consider "matters outside the pleadings, and the non-moving party does not have the benefit of 12(b)(6) safeguards." *Id.* (internal citations omitted). Defendant's motion in this matter represents a facial attack on the Court's jurisdiction, in that it challenges the legal sufficiency of the Plaintiff's complaint to support the Court's jurisdiction. Therefore, the Court will accept all of Plaintiff's factual claims as true and construe the allegations in Plaintiff's favor. *Kulkay*, 847 F.3d at 641.

A claim sounding in fraud is subject to a heightened pleading standard wherein the plaintiff "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). To satisfy this requirement, the pleader must generally set forth the "who, what, when, where, and how of the misconduct

charged*."* BJC Health Sys. v. Columbia Cas. Co., 478 F.3d 908, 917 (8th Cir. 2007) (internal quotation marks and quoted cases omitted). "[C]onclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule." Schaller Tel. Co. v. Golden Sky Sys., Inc., 298 F.3d 736, 746 (8th Cir. 2002) (quoting Commercial Prop. v. Quality Inns Int'l, Inc., 61 F.3d 639, 644 (8th Cir. 1995)).

## Discussion

Defendants argue no reasonable consumer would infer that Old Charter is aged for 8 years because of the number 8 alone. The Court cannot conclude as a matter of law and at this stage of the litigation that the packaging is not misleading, particularly in light of Plaintiffs' allegations that previously, Old Charter was aged 8 years. Consumers may just as likely have seen the 8, and based on previous purchase, thought the 8 represented the years of aging. *See, e.g., Murphy v. Stonewall Kitchen, LLC*, 503 S.W.3d 308, 312–13 (Mo. App. 2016) (declining to decide how a "reasonable consumer" would perceive the term "all natural" at an early stage of litigation, and holding that the question is appropriately addressed on a motion for summary judgment or trial); and *Thornton v. Pinnacle Foods Grp. LLC*, 2016 WL 4073713, at *3 n.3 (E.D. Mo. Aug. 1, 2016) ("Whether a reasonable consumer would be deceived by a product label is generally a question of fact that cannot be resolved on a motion to dismiss.").

**Safe Harbor**

Defendants also argue that Plaintiffs Complaint is a prohibited attack on the Alcohol Tax and Trade Bureau's ("TTB") approval of the Old Charter label statements. Defendants argue that in advertising cases, compliance with federal regulations that govern the alleged deception is a complete defense, citing *Am. Home Prods. Corp. v. Johnson & Johnson*, 672 F.Supp. 135, 144 (S.D.N.Y. 1987).

> Safe harbor doctrines generally protect defendants from incurring liability under consumer protection acts when they comply with regulatory schemes. *See, e.g.*, Colo. Rev. Stat. § 6–1–106(1)(a) (providing that "[the Colorado Consumer Protection Act] does not apply to [c]onduct in compliance with the orders or rules of, or a statute administered by, a federal, state, or local government agency...."). However, Defendants' argument again assumes that compliance with one body of regulations that affects part of Plaintiffs' claim provides a total defense. Instead, courts in many states observe that deceptive conduct, viewed as a whole, is often broader than the otherwise regulated conduct; therefore, in those circumstances, the doctrine does not apply. *See Loeffler v. Target Corp.*, 58 Cal.4th 1081, 171 Cal.Rptr.3d 189, 324 P.3d 50, 76 (Cal. 2014) (California) (quoting *Cel–Tech Commc'n, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal.4th 163, 83 Cal.Rptr.2d 548, 973 P.2d 527, 541 (Cal. 1999)) (stating "[t]o forestall an action under the unfair competition law, another provision must actually 'bar' the action or *clearly permit* the conduct.'"); *see also Price v. Philip Morris, Inc.*, 219 Ill.2d 182, 302 Ill.Dec. 1, 848 N.E.2d 1, 41 (Ill. 2005) (Illinois) (providing example where the challenged conduct was broader than the regulated conduct). Similar in spirit to California and Illinois, other states impose safe harbor doctrines only when conduct is extensively regulated. *Burton v. William Beaumont Hosp.*, 373 F.Supp.2d 707, 720 (E.D. Mich. 2005) (Michigan) (stating question is whether every

aspect of transaction is thoroughly regulated); *Johnson v. MFA Petrol. Co.*, 10 F.Supp.3d 982, 997 (W.D. Mo. 2014) (Missouri) (stating question is whether the transaction is *expressly* and *extensively* regulated); *Doug Grant, Inc. v. Greate Bay Casino Corp.*, 3 F.Supp.2d 518, 536 (D.N.J. 1998) (providing that the act only applies when the particular act or transaction is regulated specifically, concretely, and pervasively); *Duke v. Flying J, Inc.*, 178 F.Supp.3d 918, 926 (N.D. Cal. 2016) (applying North Carolina and Texas law) (stating both states offer safe harbors when conduct is specifically authorized); Ohio Rev. Code Ann. § 1345.12(A) (stating the act does not apply to "[a]n act or practice required or specifically permitted by [law]").

Other courts recognize that every business is subject to regulation, and conduct can be deceptive despite compliance with that regulation. *See Showpiece Homes Corp. v. Assurance Co. of Am.*, 38 P.3d 47, 56 (Colo. 2001) (en banc) (stating "we hold that [the Colorado Consumer Protection Act] exempts only those actions that are 'incompliance' with other laws. Conduct amounting to deceptive or unfair trade practices, however, would not appear to be 'in compliance' with other laws."); *see also Degutis v. Fin. Freedom, LLC*, 978 F.Supp.2d 1243, 1264–65 (M.D. Fla. 2013) (Florida); *Kuntzelman v. Abvo Fin. Serv. of Neb., Inc.*, 206 Neb. 130, 291 N.W.2d 705, 707 (Neb. 1980) (stating "[c]onduct is not immunized merely because the person so acting falls within the jurisdiction of a regulatory body").

Finally, although courts in Minnesota have seldom opined on the exact nature of the safe harbor provision embedded in Minnesota's Uniform Deceptive Trade Practices Act, at least one court applying Minnesota law has stated that whether a party is complying with an order contemplated by the act is a matter of fact. *Laysar, Inc. v. State Farm Mut. Auto. Ins. Co.*, No. Civ. 04-4584JRTFLN, 2005 WL 2063929, at *3 (D. Minn. Aug. 25, 2005). The *Laysar* court accordingly denied the defendant's motion to dismiss. Courts in New York have similarly declined to dismiss consumer protection actions when they are based on disputed regulation compliance issues. *See, e.g., Singleton v. Fifth Generation, Inc.*, 5:15–CV–474 (BKS/TWD), 2016 WL 406295, at *5–8 (N.D.N.Y. Jan. 12, 2016).

… Plaintiffs' claims go beyond alleging Defendants did not comply with the relevant [regulations]. Many state safe harbor doctrines do not apply when

9

> facts demonstrate the deceptive conduct extends beyond the regulated conduct. Further the parties' arguments regarding whether Defendants complied with relevant regulations involve contested matters of fact that go beyond the complaint. For those reasons, Defendants' motion to dismiss based on the application of the eleven states' safe harbor doctrines is denied.

*In re: Dollar Gen. Corp. Motor Oil Mktg. & Sales Practices Litig.*, No. 16-02709-MD-W-GAF, 2017 WL 3863866, at *24 (W.D. Mo. Aug. 3, 2017).

**Magnuson-Moss Warranty Act**

Defendants argue that Plaintiffs' Magnuson-Moss claim fails because bourbon's age is a description of the product and in no way promises any level of performance for any period of time, as required under the Magnuson-Moss act. Plaintiffs fail to address this argument, and the Court agrees that Plaintiff's Complaint fails to set forth what written warranty, as defined by the Act, Plaintiffs contend was breached. Count VI will be dismissed.

**Fraud**

Defendants argue Plaintiffs have not satisfied Rule 9(b)'s particularity requirements. Specifically, Defendants contend Plaintiffs have not pled any specific facts but rather rely on generalized allegations that Defendants' intent was to induce Plaintiffs and the Class to purchase the product at issue.

In order to articulate the elements of fraud with sufficient particularity, a plaintiff must state the "who, what, where, when, and how" of the alleged fraud. *BJC Health Sys. v. Columbia Cas. Co.,* 478 F.3d 908, 917 (8th Cir. 2007). A

plaintiff need not state each element of the fraud claim with particularity to satisfy this requirement; rather, a plaintiff "must state enough so that his/her pleadings are not merely conclusory." *Roberts v. Francis*, 128 F.3d 647, 651 (8th Cir. 1997). The Court has carefully reviewed Plaintiff's complaint and concludes that it meets the standards of pleading with particularity as set forth in Rule 9(b) because it adequately alleges (i) the who: Old Charter; (ii) the what: the number 8 on the bottles of Old Charter in several spots; (iii) the when: purchases made beginning in January 2014 through the present; (iv) the where: on the label of Old Charter Bourbon; (v) and the how: by representing that Old Charter was aged 8 years. Thus, Defendants' motion to dismiss on Rule 9(b) grounds will be denied.

**Unjust Enrichment**

"To establish the elements of an unjust enrichment claim, a plaintiff must show, (1) it conferred a benefit on the defendant; (2) the defendant appreciated the benefit; and (3) the defendant accepted and retained the benefit under circumstances that are inequitable or unjust." *AIG Agency, Inc. v. Mo. Gen. Ins. Agency, Inc.*, 474 S.W.3d 222, 228 (Mo. Ct. App. 2015). "Unjust retention of benefits only occurs when the benefits were 'conferred (a) in misreliance on a right or duty; or (b) through dutiful intervention in another's affairs; or (c) under constraint.' " *Howard v. Turnbull*, 316 S.W.3d 431, 436 (Mo. Ct. App. 2010)

(quoting *Graves v. Berkowitz*, 15 S.W.3d 59, 62 (Mo. Ct. App. 2000)). Here, "misreliance" refers to a mistake of fact. *Id.* at 436 n.4.

The core of Plaintiffs' Complaint is that Defendants' labeling practices mislead their consumers regarding the age of the bourbon, and therefore its quality. Consumers rely on Defendants' labels to be truthful and not misleading when making purchasing decisions, and they have a right to so rely. Plaintiffs claim they would not have purchased Defendants' product had they been aware of the false or misleading nature of Defendants' labels. Through this lens, it appears to this Court that it would be unjust to permit Defendants to retain the monetary benefit derived from Plaintiffs' purchases if, in fact, its labels are false or misleading. Thus, Plaintiff has successfully stated a claim for unjust enrichment.

"The Federal Rules allow a plaintiff to 'state [in one complaint] as many separate claims ... as it has.' " *Gelboim v. Bank of America Corp.,* 135 S.Ct. 897, 902 (2015) (quoting Fed.R .Civ.P. 8(d)(3)) (alteration in original). In their amended complaint, Plaintiffs have presented alternative claims for breach of contract and unjust enrichment. Their claims for unjust enrichment shall not be dismissed at this stage of the litigation as legally implausible. *See Whitney v. Guys, Inc.,* 700 F.3d 1118, 1130 (8th Cir.2012) (citing Rule 8(d)(2) and rejecting defendant's argument that separate claims were not plausible as "fail[ing] to acknowledge the importance of allowing plaintiffs to plead in the alternative").

*Doug Volz v. Provider Plus, Inc., Jeff Serafin*, No. 4:15CV0256 TCM, 2015 WL 3621113, at *5 (E.D. Mo. June 9, 2015).

**Nationwide class standing**

Defendants also argue that Plaintiffs have no standing to assert claims under other states' laws. The Court finds persuasive the majority of the authorities that follow the class certification approach, limiting the standing inquiry to the named plaintiff's individual standing, and deferring consideration of whether the plaintiff may represent others until a later stage. *See, e.g., In re: McCormick & Co., Inc.*, 2016 WL 6678340, at *12–13 (D.D.C. Nov. 11, 2016) (and cases cited therein). As the *McCormick* court explained, it is more logical to consider a named plaintiff's ability to raise other state-law claims as a question of commonality, typicality, and adequacy under Rule 23, than as a question of standing. Standing analysis cannot address whether a named plaintiff should be able to bring claims on behalf of a class of others. However, Rule 23(a)'s requirements were designed precisely to address whether a named plaintiff can do so. In addition, the class certification approach has the benefit of resolving any disjuncture between a named plaintiff's injuries and the class's without engaging in unnecessary constitutional adjudication. *See* 1 Newberg on Class Actions § 2.6 (and citations therein at n. 27). Here, the standing doctrine's focus on ensuring that a case or controversy exists has been satisfied with respect to Plaintiffs' individual claims. However, at this stage

of the litigation, there is neither evidence nor briefing before the Court concerning Plaintiffs' ability to represent others under the requirements of Rule 23(a). Therefore, whether Plaintiffs may pursue claims on behalf of others is a question that is appropriately deferred.

**Negligent Misrepresentation**

The Court agrees with Defendants that Plaintiffs' failure to address the challenge to their negligent misrepresentation claim essentially concedes the failure to state a claim of negligent misrepresentation. Count IX will be dismissed.

**Express Warranty**

To prevail on breach of express warranty, a plaintiff is required to show that a seller: (1) sold goods to the plaintiff; (2) made a statement of fact about the kind or quality of those goods; (3) the statement was a material factor that induced the plaintiff's purchase; (4) the goods did not conform to that statement of fact; (5) the nonconformity injured the buyer, and; (6) the buyer notified the seller of the nonconformity of the goods in a timely manner. *Renaissance Leasing, LLC v. Vermeer Mfg. Co.*, 322 S.W.3d 112, 122 (Mo. 2010) (en banc). Plaintiff adequately pleaded a claim for breach of express warranty. The labels at issue in this case represent express warranties. The label tells purchasers that the bourbon has been aged for 8 seasons, which could be construed as years because of previous labeling. Plaintiffs allege that the products do not conform to that statement

Furthermore, Plaintiffs allege reliance on the label and that they were material in making their purchasing decisions.

**Implied Warranty of Merchantability**

Claims that a defendant breached the implied warranty of merchantability require that a plaintiff prove that defendant: (1) sold goods to the plaintiff; (2) that were not "merchantable" at the time of the sale; (3) the plaintiff suffered injury or damages to himself or his property; (4) the defective nature of the goods was the proximate cause of the harm, and; (5) plaintiff gave notice to the defendant. *Hope v. Nissan N.A., Inc.*, 353 S.W.3d 68, 90 (Mo. Ct. App. 2011). Notably, "the implied warranty of merchantability does not mean a promise by the merchant that the goods are exactly as the buyer expected, but rather that the goods *satisfy a minimum level of quality.*" *Id.* (emphasis in original). The test for "merchantability" is whether the goods are "fit for the ordinary purposes for which such goods are used." Mo. Rev. Stat. § 400.2-314.1(2)(c). Plaintiffs' Complaint is premised on their belief that the products they purchased were not the products advertised in the labels. Assuming the truth of the allegations and all reasonable inferences in Plaintiffs' favor, they bought products with labels indicating that the bourbon was aged 8 years when it in fact was not. However, nothing in Plaintiff's complaint indicates a lack of merchantability. They make only conclusory allegations that the products were not merchantable. The products at issue are food

products, and Plaintiffs' allegations give no reason to believe that the products were unfit for their ordinary purpose: consumption as food by humans. Rather, Plaintiffs' Complaint is fundamentally premised on allegations that the products did not meet Plaintiffs' expectations. That is not sufficient to establish a breach of the implied warranty of merchantability.  Count VII will be dismissed.

Plaintiffs request that the Court enjoin Defendant from "continuing the illegal practices detailed in the Complaint and compelling Defendants to undertake a corrective advertising campaign. Defendant argues that Plaintiffs lack standing to pursue an injunction because Plaintiffs have not pleaded future injury, in that Plaintiffs have not indicated an intention to buy Defendants' products in the future. "[T]o seek injunctive relief, a plaintiff must show that he is under threat of suffering 'injury in fact' that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical; it must be fairly traceable to the challenged action of the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury. *Missourians for Fiscal Accountability v. Klahr*, 830 F.3d 789, 794 (8th Cir. 2016) (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 493, 129 S. Ct. 1142, 173 L. Ed. 2d 1 (2009)). "The fact of past damages, 'while presumably affording [the plaintiff] standing to claim damages ... does nothing to establish a real, immediate threat that he would again' suffer similar injury in the future." *Harmon v. City of Kansas City, Mo.*, 197

F.3d 321, 327 (8th Cir. 1999) (quoting *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 210-11, 115 S. Ct. 2097, 132 L. Ed. 2d 158 (1995)). "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief ... if unaccompanied by any continuing, present adverse effects." *O'Shea*, 414 U.S. at 495-96, 94 S. Ct. 669.

Although Plaintiffs claim that they would be willing to purchase Old Charter in the future in their Memorandum in Opposition to the Motion to Dismiss, Plaintiffs' Complaint provides no indication of future intention to purchase the product. Indeed, if one took Plaintiffs at their word, there are numerous indications in the Complaint that they will *not* purchase Defendants' product in the future. Plaintiffs have not shown that he is under the threat of suffering a future injury caused by Defendants' labeling practices. Therefore, Plaintiffs lack standing to obtain injunctive relief.

**Conclusion**

Under the applicable legal standards, assuming the truth of the allegations in the Complaint and drawing all reasonable inferences in favor of Plaintiffs, Plaintiffs' Complaint withstands the Rule 12(b)(6) challenge, with the exception of Counts VI, VII, and IX. These Counts will be dismissed without prejudice.

Accordingly,

**IT IS HEREBY ORDERED** that the Motion to Dismiss, [Doc. No. 14] is granted in part and denied in part.

**IT IS FURTHER ORDERED** that Counts VI, VII, and IX are dismissed, without prejudice.

Dated this 5th day of February, 2018.

_____
UNITED STATES DISTRICT JUDGE